******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMEY MURPHY ET AL. *v.* TOWN OF DARIEN ET AL.
(SC 19983)

Robinson, C. J., and Palmer, D'Auria, Mullins and Kahn, Js.

*Syllabus*

Pursuant to the Federal Railroad Safety Act of 1970 (49 U.S.C. § 20106 [a] [2]) and United States Supreme Court precedent, *CSX Transportation, Inc.* v. *Easterwood* (507 U.S. 664), interpreting that act, a state law negligence claim relating to the operation of a railroad may be preempted when "federal regulations" prescribed by the Secretary of Transportation or the Secretary of Homeland Security "substantially subsume the subject matter of the relevant state law" on which the negligence claim is based.

The plaintiff, individually and on behalf of the estate of her late husband, K, sought damages from the defendant railroad company, M Co., alleging, inter alia, that M Co. had negligently caused K's death. K had slipped on a train station boarding platform and had fallen onto the track immediately adjacent to the platform. Shortly thereafter, a train that M Co. was operating on that track and that was passing through the station on its way to another destination struck K, even though, the plaintiff alleged, M Co. could have operated that train on another track. M Co. filed a motion for summary judgment in the trial court, claiming that the plaintiff's negligence claim was preempted under the act. The trial court granted that motion, concluding that, notwithstanding the absence of a federal regulation specifically covering the question of track selection, extensive federal regulations relating to railroad track safety substantially subsumed the subject matter of the plaintiff's claim. The trial court rendered judgment for M Co., and the plaintiff appealed, claiming that the trial court incorrectly had concluded that her claim was preempted by the act. *Held* that the trial court improperly granted M Co.'s motion for summary judgment, M Co. having failed to meet its burden of demonstrating that the plaintiff's claim of negligent track selection was preempted under the act, and, accordingly, the judgment was reversed and the case was remanded for further proceedings: a review of case law from other jurisdictions indicated that a state law negligence claim is preempted under the act only when there is a federal regulation that thoroughly addresses the safety concern raised in the plaintiff's complaint, rather than one that merely mentions or tangentially relates to that concern, the federal regulations (49 C.F.R. §§ 213.53, 213.57, 213.109 and 213.121 [2012]) on which the trial court relied in concluding that the plaintiff's claim was preempted address topics such as the measurement of gage size, the elevation of outer rails on a curve, and the components of a rail, including crossties and rail joints, but do not address the subject matter of the plaintiff's operative complaint, namely, a railroad company's selection of an interior versus an exterior track for a train passing through a station, and, therefore, this court could not conclude that the regulatory scheme substantially subsumed the subject matter of the plaintiff's negligence claim; moreover, although the plaintiff's claim tangentially related to the speed of the train passing through the station, the federal regulation (49 C.F.R. § 213.9 [2012]) prescribing the maximum speed at which trains may operate on certain classes of track did not require preemption of the plaintiff's claim, as nothing in that regulation addressed the question of track selection.

Argued November 5, 2018—officially released July 9, 2019

*Procedural History*

Action to recover damages for, inter alia, the alleged wrongful death of the named plaintiff's husband, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Kamp, J.*, granted the motion for summary judgment filed by the defendant Metro-North Commuter Railroad Company

and rendered judgment thereon, from which the plaintiffs appealed. *Reversed*; *further proceedings*.

*James J. Healy*, with whom were *Joel T. Faxon* and, on the brief, *John P. D'Ambrosio*, for the appellants (plaintiffs).

*Robert O. Hickey*, with whom, on the brief, were *Beck S. Fineman* and *Kerianne E. Kane*, for the appellee (defendant Metro-North Commuter Railroad Company).

*Opinion*

MULLINS, J. The sole issue in this appeal is whether the Federal Railroad Safety Act of 1970 (railroad act), 49 U.S.C. § 20101 et seq., preempts the negligence claims brought by the plaintiff, Jamey Murphy, individually and as executrix of the estate of her late husband, Kevin Murphy (decedent), against the defendant Metro-North Commuter Railroad Company.[1] We conclude that the railroad act does not preempt the plaintiff's negligence claims and, accordingly, reverse the judgment of the trial court rendered in favor of the defendant on that ground.[2]

The following facts and procedural history are relevant to this appeal. On March 4, 2013, at approximately 6:30 a.m., the decedent, was walking on the platform adjacent to the westbound tracks at the Noroton Heights train station in Darien. The decedent was awaiting his commuter train to New York City. On that morning, there was a patch of ice on the platform, which measured approximately nine feet long and approximately one foot wide. As the decedent was walking on the platform, he encountered the ice patch, slipped and fell onto the westbound track closest to the platform.

At that time, one of the defendant's trains was coming around a curve and approaching the Noroton Heights station on the track closest to the westbound platform. This train was scheduled to travel through the Noroton Heights station without stopping and to do the same through four other commuter stations before completing its express route to Stamford. This type of train is referred to as a "through train."

As the train approached the Noroton Heights station, the engineer sounded the train's horn. He then saw an object on the track. When the engineer realized it was a person, he sounded the horn again and applied the emergency brake. Nevertheless, the train struck the decedent. As a result of the collision, the decedent suffered severe trauma and was pronounced dead at the scene.

The plaintiff subsequently brought this action against the defendant. See footnote 1 of this opinion. Specifically, the operative complaint[3] alleges that the decedent's injuries and death were proximately caused by the negligence of the defendant when "it violated practices and customs with respect to track selection by moving a through train traveling in excess of seventy miles per hour on the track immediately adjacent to the platform when reasonable care and general practice of [the defendant] required that train to be on an interior track away from the platform." The plaintiff also alleges that the defendant's negligence caused her to suffer loss of spousal consortium. After discovery, the defendant filed a motion for summary judgment, and the plaintiff filed an objection.

In support of that motion, the defendant asserted that the plaintiff's negligence claims were preempted by federal law. Specifically, the defendant asserted, in pertinent part, that the plaintiff's claims were barred by the railroad act. The trial court agreed with the defendant, concluding that, "[t]o the extent that the plaintiff's claim is viewed as relating to rail safety, it is preempted by the [railroad act]." Accordingly, the trial court granted the motion for summary judgment and rendered judgment thereon in favor of the defendant. This appeal followed.[4]

On appeal, the plaintiff asserts that the trial court incorrectly concluded that her claims were preempted by the railroad act. Specifically, the plaintiff asserts that the railroad act only preempts claims where a federal regulation covers the subject matter, and no such regulation exists for track selection. In response, the defendant asserts that the trial court properly granted its motion for summary judgment because the plaintiff's claims are preempted by the railroad act. Specifically, the defendant asserts that the subject matter of the plaintiff's claim is covered by federal regulation— namely, regulations addressing speed and track classification. We agree with the plaintiff.

"The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citation omitted; internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 772–73, 176 A.3d 1 (2018). "[T]he use of a motion for summary judgment to challenge the legal sufficiency of a complaint is appropriate when the complaint fails to set forth a cause of action and the defendant can establish that the defect could not be cured by repleading." (Internal quotation marks omitted.) *Ferri* v. *Powell-Ferri*, 317 Conn. 223, 236, 116 A.3d 297 (2015).

In the present case, the trial court granted the defendant's motion for summary judgment on the ground that the plaintiff's complaint was insufficient because the negligence claims raised therein were preempted by the railroad act. Accordingly, resolution of this appeal requires us to examine the trial court's conclusion that the plaintiff's negligence claims are preempted by the railroad act.

In doing so, we note that the question of whether the plaintiff's negligence claims are preempted by the railroad act is one of law, and, therefore, our review is plenary. "Whether state causes of action are preempted by federal statutes and regulations is a question of law over which our review is plenary." *Byrne* v. *Avery Center for Obstetrics & Gynecology, P.C.*, 314 Conn. 433, 447, 102 A.3d 32 (2014); see also *Hackett* v. *J.L.G. Properties, LLC*, 285 Conn. 498, 502–504, 940 A.2d 769 (2008) (whether trial court's conclusion that municipal zoning regulations were preempted by federal law was a question of law over which court exercised plenary review). "[T]here is a strong presumption against federal preemption of state and local legislation. . . . This presumption is especially strong in areas traditionally occupied by the states . . . ." (Citation omitted; internal quotation marks omitted.) *Dowling* v. *Slotnik*, 244 Conn. 781, 794, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998).

"The ways in which federal law may [preempt] state law are well established and in the first instance turn on congressional intent. . . . Congress' intent to supplant state authority in a particular field may be express[ed] in the terms of the statute. . . . Absent explicit [preemptive] language, Congress' intent to supersede state law in a given area may nonetheless be implicit if a scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the [s]tates to supplement it, if the [a]ct of Congress . . . touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or if the goals sought to be obtained and the obligations imposed reveal a purpose to preclude state authority. . . .

"The question of preemption is one of federal law, arising under the supremacy clause of the United States constitution. . . . Determining whether Congress has exercised its power to preempt state law is a question of legislative intent. . . . [A]bsent an explicit statement that Congress intends to preempt state law, courts should infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the [s]tates to supplement federal law . . . or where the state law at issue conflicts with federal law, either because it is impossible to comply with both . . . or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives . . . ." (Citation omitted; internal quotation marks omitted.) *Hackett* v. *J.L.G. Properties, LLC*, supra, 285 Conn. 503–504.

Furthermore, the United States Supreme Court has explained that "[w]here a state statute conflicts with, or frustrates, federal law, the former must give way.

U.S. Const., [a]rt. VI, cl. 2; *Maryland* v. *Louisiana*, 451 U.S. 725, [746, 101 S. Ct. 2114, 68 L. Ed. 2d 576] (1981). In the interest of avoiding unintended encroachment on the authority of the [s]tates, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find [preemption]. Thus, [preemption] will not lie unless it is 'the clear and manifest purpose of Congress.' *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, [230, 67 S. Ct. 1146, 91 L. Ed. 1447] (1947). Evidence of [preemptive] purpose is sought in the text and structure of the statute at issue. *Shaw* v. *Delta Air Lines, Inc.*, 463 U.S. 85, [95, 103 S. Ct. 2890, 77 L. Ed. 2d 490] (1983). If the statute contains an express [preemption] clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' [preemptive] intent." *CSX Transportation, Inc.* v. *Easterwood*, 507 U.S. 658, 663–64, 113 S. Ct. 1732, 123 L. Ed. 2d 387 (1993); see also id., 673–75 (concluding that negligence claim relating to failure to maintain adequate warning devices at rail crossing was not preempted by railroad act, but negligence claim alleging excessive speed was preempted by railroad act).

A brief review of the railroad act provides context for our analysis. The railroad act "was enacted in 1970 to promote safety in all areas of railroad operations and to reduce [railroad related] accidents, and to reduce deaths and injuries to persons . . . . [Under the railroad act], the Secretary [of Transportation] is given broad powers to prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety . . . ." (Citations omitted; internal quotation marks omitted.) Id., 661–63; see also 49 U.S.C. § 20101 (2012) (statement of legislative purpose); 49 U.S.C. § 20103 (a) (2012) (delegating regulatory authority to Secretary of Transportation).

The railroad act contains an express preemption clause, codified at 49 U.S.C. § 20106, entitled "Preemption." That statute provides in relevant part: "(a) National Uniformity of Regulation.—(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.

"(2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order—

"(A) is necessary to eliminate or reduce an essentially

local safety or security hazard;

"(B) is not incompatible with a law, regulation, or order of the United States Government; and

"(C) does not unreasonably burden interstate commerce." 49 U.S.C. § 20106 (a) (2012).

In 2007, Congress amended the railroad act preemption clause by adding subsection (b). See Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110-53, § 1528, 121 Stat. 266, 453. That subsection, which is entitled "Clarification Regarding State Law Causes of Action," provides in relevant part: "Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party—

"(A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;

"(B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or

"(C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a) (2)." 49 U.S.C. § 20106 (b) (1) (2012).

As a result of this amendment, federal courts have concluded that "the preemption analysis under the amended [railroad act] requires a two step process. We first ask whether the defendant allegedly violated either a federal standard of care or an internal rule that was created pursuant to a federal regulation. If so, the plaintiff's claim avoids preemption. [See 49 U.S.C. § 20106 (b) (1) (A) and (B) (2012)]. Otherwise, we move to the second step and ask whether any federal regulation covers the plaintiff's claim. [See 49 U.S.C. § 20106 (a) (2) (2012)]. A regulation covers—and thus preempts— the plaintiff's claim if it 'substantially subsume[s] the subject matter' of that claim. [*CSX Transportation, Inc.* v. *Easterwood*, supra, 507 U.S. 664] (noting that the regulation must do more than 'touch upon or relate to [the] subject matter')." *Zimmerman* v. *Norfolk Southern Corp.*, 706 F.3d 170, 178 (3d Cir.), cert. denied, 571 U.S. 826, 134 S. Ct. 164, 187 L. Ed. 2d 41 (2013); see also *Grade* v. *BNSF Railway Co.*, 676 F.3d 680, 686 (8th Cir. 2012); *Henning* v. *Union Pacific Railroad Co.*, 530 F.3d 1206, 1214–16 (10th Cir. 2008).[5]

The parties agree that the plaintiff's claim does not allege that the defendant violated any regulation or order, or failed to comply with its own plan, rule, or standard of care that it adopted pursuant to a federal regulation. Accordingly, the parties agree that the

appropriate preemption analysis is contained within 49 U.S.C. § 20106 (a) (2). This provision provides that a state law cause of action is preempted if the Secretary of Transportation or the Secretary of Homeland Security has "prescribe[d] a regulation or issue[d] an order *covering the subject matter* of the State requirement" on which the plaintiff's negligence claim is based. (Emphasis added.) 49 U.S.C. § 20106 (a) (2) (2012). Thus, the issue before this court is whether the Secretary of Transportation or the Secretary of Homeland Security has promulgated regulations covering the same subject matter as Connecticut negligence law pertaining to the selection of an interior track for a through train.

As the United States Supreme Court has explained, "[t]o prevail on the claim that the regulations have [preemptive] effect, [a] petitioner must establish more than that they 'touch upon' or 'relate to' that subject matter . . . for 'covering' is a more restrictive term which indicates that [preemption] will lie only if the federal regulations substantially subsume the subject matter of the relevant state law. [See Webster's Third New International Dictionary (1961) p. 524] (in the phrase 'policy clauses covering the situation,' cover means 'to comprise, include, or embrace in an effective scope of treatment or operation'). The term 'covering' is in turn employed within a provision that displays considerable solicitude for state law in that its express [preemption] clause is both prefaced and succeeded by express saving clauses." (Citation omitted.) *CSX Transportation, Inc.* v. *Easterwood*, supra, 507 U.S. 664–65.

In the present case, the plaintiff's claim alleges that the defendant was negligent in selecting the track immediately adjacent to the platform to run a "through train." As we have explained, in order to resolve the plaintiff's appeal, we must determine whether there is a federal regulation that covers, or substantially subsumes, the plaintiff's claim. The defendant does not point to any federal regulation that expressly governs track selection. Indeed, the trial court recognized that, "[a]s both parties have conceded, there is no federal rule or regulation that specifically governs track selection."

Nevertheless, the trial court reasoned that, "[al]though there is not a federal regulation that specifically covers track selection, the federal regulations in regards to tracks is extensive and, therefore, subsume the subject matter of the plaintiff's claim." In support of its conclusion, the trial court relied on several specific regulations contained within part 213 of title 49 of the Code of Federal Regulations, which is entitled "Track Safety Standards." See 49 C.F.R. § 213.9 (2012) (setting speed limits for trains operating on each class of track); 49 C.F.R. § 213.53 (2012) (measuring gage of track); 49 C.F.R. § 213.57 (2012) (establishing speed limitations based on curvature and elevation of track); 49 C.F.R. § 213.109 (2012) (establishing requirements for cross-

ties); 49 C.F.R. § 213.121 (2012) (establishing requirements for rail joints); 49 C.F.R. § 213.231 et seq. (2012) (establishing requirements for track inspection). The trial court reasoned that, "[a]s part of an overall scheme to standardize railroad transportation and specifically as a scheme that expansively covers railroad track safety . . . the subject matter of the plaintiff's claim is clearly 'covered' and 'substantially subsumed' by these federal regulations." (Citation omitted; emphasis omitted.) We disagree.

We first turn to the regulations on which the trial court relied, namely, part 213 of title 49 of the Code of Federal Regulations. The scope of these regulations is explained as follows: "This part prescribes minimum safety requirements for railroad track that is part of the general railroad system of transportation. In general, the requirements prescribed in this part apply to specific track conditions existing in isolation. Therefore, a combination of track conditions, none of which individually amounts to a deviation from the requirements in this part, may require remedial action to provide for safe operations over that track. This part does not restrict a railroad from adopting and enforcing additional or more stringent requirements not inconsistent with this part." 49 C.F.R. § 213.1 (a) (2012). Accordingly, part 213 of title 49 of the Code of Federal Regulations expressly states that it provides minimum safety requirements and that conditions may be present that require a greater standard of care.

Indeed, although the regulations cited by the trial court touch upon tracks, nothing in those regulations indicates that they subsume the subject matter of selecting tracks for through trains. Those regulations set forth how the gage of a track is to be measured and the required size for various tracks. See 49 C.F.R. § 213.53 (2012). Another regulation regulates the maximum elevation of the outer rail on a curve. See 49 C.F.R. § 213.57 (2012). Other regulations regulate the components of a rail—i.e. crossties and rail joints. See 49 C.F.R. §§ 213.109 and 213.121 (2012). Yet another regulation delineates the speed a train can travel on tracks of various classes. See 49 C.F.R. § 213.9 (2012). Each of these regulations covers a different subject matter than that raised by the plaintiff's claim—namely, selection of an interior or exterior track for operation of a through train. None of the regulations relied on by the defendant or cited by the trial court even mentions selection of an interior or exterior track. Accordingly, the express terms of these provisions support a conclusion that the plaintiff's claim is not covered by the regulations.

Although no court has addressed a track selection claim similar to the plaintiff's claim in this case, a review of the case law regarding preemption of state law claims under the railroad act is instructive. For instance, in *CSX Transportation, Inc.* v. *Easterwood,* supra, 507

U.S. 667–68,[6] the United States Supreme Court held that the railroad act did not preempt a state common-law negligence claim regarding the railroad's duty to maintain warning devices at a railroad crossing. In doing so, the United States Supreme Court rejected the railroad's claim that the subject matter of the plaintiff's claim was covered by regulations requiring that all traffic control devices installed comply with the Federal Highway Administration's manual on uniform traffic control devices. Id., 665–66. Instead, the United States Supreme Court explained that, although the states were required to employ warning devices that conformed to standards set forth in the regulations in order to obtain federal funding, state negligence law always played a role in maintaining safety at railroad crossings, and "there is no explicit indication in the regulations . . . that the terms of the [f]ederal [g]overnment's bargain with the [s]tates require modification of this regime of separate spheres of responsibility." Id., 668. Accordingly, the United States Supreme Court reasoned that, "[i]n light of the relatively stringent standard set by the language of [the railroad act's preemption provision] and the presumption against preemption, and given that the regulations provide no affirmative indication of their effect on negligence law, [the court is] not prepared to find [preemption] solely on the strength of the general mandates of [regulations governing warning devices at railroad crossings]." Id.

On the other hand, in *Norfolk Southern Railway Co. v. Shanklin*, 529 U.S. 344, 352–53, 120 S. Ct. 1467, 146 L. Ed. 2d 374 (2000), the United States Supreme Court did conclude that a state law negligence claim alleging that there were inadequate warning signs at a railroad crossing was preempted when the federal regulations applicable to that railroad crossing required the installation of a particular warning device at a particular railway crossing. Accordingly, the United States Supreme Court concluded that, "[b]ecause those regulations establish requirements as to the installation of particular warning devices . . . when [those regulations] are applicable, state tort law is [preempted]. . . . Unlike the [regulations at issue in *Easterwood*, these regulations], displace state and private [decision-making] authority by establishing a [federal law] requirement that certain protective devices be installed or federal approval obtained. . . . As a result, those regulations effectively set the terms under which railroads are to participate in the improvement of crossings." (Citations omitted; internal quotation marks omitted.) Id.[7]

The United States Court of Appeals for the Second Circuit also has examined whether a state law claim was preempted by the railroad act. In *Island Park, LLC v. CSX Transportation*, 559 F.3d 96, 108 (2d Cir. 2009), the Second Circuit concluded that a state agency order to close a private rail crossing was not preempted by the railroad act. Although it concluded that the closure

order implicated railroad safety, it concluded that it was not preempted by the railroad act because the railroad act "allows states to impose rail safety requirements as long as they are not inconsistent with federal mandates. [The plaintiff] points to no federal rail safety regulation that covers rail crossing closures. Accordingly, the state closure order is not [preempted] by [the railroad act]." Id.

In *Strozyk* v. *Norfolk Southern Corp.*, 358 F.3d 268, 269 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit concluded that a state common-law negligence claim against a railroad alleging poor visibility at a railroad crossing was not preempted by the railroad act. The railroad asserted that the plaintiff's claim was preempted by the regulations because the regulations addressing the installation of warning devices at railroad crossings mentioned limited visibility. Id., 273. The Third Circuit rejected the railroad's claim and concluded that a regulation's "bare mention" of limited visibility did "not indicate an intent to regulate" that condition. Id.

Similarly, the United States Court of Appeals for the Sixth Circuit concluded that a state law negligence claim alleging that vegetative growth on railroad property obstructed the motorist's view of an oncoming train was not preempted. *Shanklin* v. *Norfolk Southern Railway Co.*, 369 F.3d 978, 987 (6th Cir. 2004); see also footnote 8 of this opinion. The railroad asserted that the plaintiff's claim was preempted by regulations under the railroad act that addressed the installation of warning devices and one that provided that "[v]egetation on railroad property which is on or immediately adjacent to [the] roadbed shall be controlled so that it does not . . . [o]bstruct visibility of railroad signs and signals," preempted the plaintiff's claim. (Internal quotation marks omitted.) Id. The Sixth Circuit explained that the regulation regarding vegetation preempts any state law claim "regarding vegetative growth that blocks a sign immediately adjacent to a crossing, but it does not impose a broader duty to control vegetation so that it does not obstruct a motorist's visibility of oncoming trains." (Internal quotation marks omitted.) Id. Accordingly, the Sixth Circuit concluded that the plaintiff's claim was not preempted because, although these regulations touched upon vegetation, they did not substantially subsume the subject matter of the plaintiff's claim. Id., 988; see also 49 C.F.R. § 213.37 (b) (1993).

The Third Circuit addressed preemption under the railroad act again in *MD Mall Associates, LLC* v. *CSX Transportation, Inc.*, 715 F.3d 479, 491 (3d Cir. 2013), cert. denied, 571 U.S. 1126, 134 S. Ct. 905, 187 L. Ed. 2d 778 (2014). In that case, the Third Circuit concluded that a mall owner's state law claim against a railroad owner alleging negligence and storm water trespass was not preempted by the railroad act. Id., 490–91. In

doing so, the Third Circuit rejected the railroad owner's claim that a regulation promulgated under the railroad act, which requires that a railroad's drainage facilities "under or immediately adjacent" to the track "be maintained and kept free of obstruction" preempted the mall owner's state law claims. (Internal quotation marks omitted.) Id.; see also 49 C.F.R. § 213.33 (2010). The Third Circuit explained that it could not "read the silence of [49 C.F.R.] § 213.33 on a railroad's duties to its neighbors when addressing track drainage as an express abrogation of state storm water trespass law. Given that the [railroad act] provides no express authorization for disposing of drainage onto an adjoining property, the presumption must be that state laws regulating such action survive . . . ." (Citation omitted.) *MD Mall Associate, LLC* v. *CSX Transportation, Inc.*, 491.

Another instructive case is *Haynes* v. *National Railroad Passenger Corp.*, 423 F. Supp. 2d 1073 (C.D. Cal. 2006). In *Haynes*, the estate and children of a passenger who suffered a deep vein thrombosis after traveling on an Amtrak train from Chicago to Los Angeles brought an action in state court alleging that Amtrak violated common-law and statutory duties of care that common carriers must exercise with respect to their passengers. Id., 1077. Specifically, the plaintiffs alleged that dangerous seats and seating configurations in Amtrak trains and Amtrak's failure to warn passengers about deep vein thrombosis caused the decedent to suffer deep vein thrombosis and die. Id., 1078.

The railroad filed a motion to dismiss for failure to state a claim on which relief can be granted. Id., 1077. In its motion, the railroad claimed, inter alia, that the plaintiffs' claims were preempted by the railroad act. Id., 1081. Specifically, the railroad claimed that the federal regulations addressing seats and their configuration on passenger trains covered the subject matter of the plaintiffs' complaint, thereby rendering the plaintiff's claim preempted by the railroad act. Id., 1082. The United States District Court for the Central District of California explained that federal regulations addressed safe passenger seats, how seats must be fastened to the car body, the load the seats must be able to withstand, and the inspection process for train seats. Id., 1082.

Nevertheless, the court explained that "[t]he regulations relied upon by the [railroad] govern seat safety for circumstances involving train crashes and broken seats. There is no discussion in the regulations of leg room, seat pitch, or ensuring that seats do not contribute to discomfort or illnesses like [deep vein thrombosis]. The [c]ourt finds that there are no federal safety or security regulations that substantially subsume state tort actions regarding potential of [deep vein thrombosis] from poorly designed seats or seating arrange-

ments." Id.

The court also concluded that there were no federal regulations that substantially subsumed the plaintiffs' claims based on a duty to warn passengers about deep vein thrombosis. Id. The court reasoned that, although there are federal regulations regarding passenger safety on trains in an emergency situation, because deep vein thrombosis arises in nonemergency situations, the safety regulations did not subsume the subject matter of deep vein thrombosis warnings. Id.

The rationale employed in *Haynes* is instructive in the present case because it demonstrates that, even when courts have found an extensive regulatory scheme in a particular area—such as passenger seating on trains—the breadth of regulation does not mean that the subject matter of a complaint is substantially subsumed by the regulations.[8]

A review of the case law regarding preemption under the railroad act demonstrates that courts have been reticent to find that a regulatory scheme covers or substantially subsumes the subject matter of a plaintiff's claim. Indeed, even when regulations form a broad regulatory scheme or mention the subject of a plaintiff's claim, courts have not found preemption unless the subject matter is clearly subsumed by the regulations. This construction of the railroad act is consistent with the principle that, "[i]n the interest of avoiding unintended encroachment on the authority of the [s]tates . . . a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find [preemption]. Thus, [preemption] will not lie unless it is 'the clear and manifest purpose of Congress.' " *CSX Transportation, Inc.* v. *Easterwood*, supra, 507 U.S. 663–64. Furthermore, the limited application of preemption of the railroad act is also consistent with the express preemption provision contained in the railroad act, which "displays considerable solicitude for state law . . . ." Id., 665.

In the present case, the defendant asserts that the trial court correctly concluded that, although there is no regulation expressly addressing the selection of an interior or exterior track for trains, the general regulatory scheme of track classification substantially subsumes the subject matter of the plaintiff's claim. We disagree.

The defendant claims, and trial court concluded, that *Zimmerman* v. *Norfolk Southern Corp.*, supra, 706 F.3d 170, supports the defendant's contention that the plaintiff's claim is preempted by the act. In *Zimmerman*, the plaintiff was a motorcyclist who was partially paralyzed in a collision with a train at a railroad crossing. Id., 175. The plaintiff claimed, inter alia, that the railroad should have been liable for misclassification of the track. Id., 186–87. Specifically, the plaintiff claimed that

the railroad violated a federal standard of care established by part 213 of title 49 of the Code of Federal Regulations, which contains regulations for each class of tracks. Id., 187. The plaintiff claimed that, under these regulations, the railroad was obligated to classify the track as class two or higher due to the limited sight distance on the track. Id. The Third Circuit rejected the plaintiff's claim that there was a federal standard of care regarding classification of the tracks based on sight distance. Id. Instead, the Third Circuit concluded that no regulation established the sight distance necessary for each class of tracks, so no relevant federal standard of care existed. Id.

The Third Circuit further explained that, "[d]espite the absence of a federal standard of care, [the plaintiff] may still avoid preemption if his claim falls outside the scope of the original [railroad act] preemption provision. . . . As we have previously made clear, state claims are within the scope of this provision if federal regulations 'cover' or 'substantially subsume' the subject matter of the claims. . . . The regulations must do more than 'touch upon or relate to that subject matter.' " (Citations omitted.) Id. The Third Circuit then concluded that the regulations in part 213 of title 29 of the Code of Federal Regulations "subsume[d] [the plaintiff's] misclassification claim. These regulations establish varying requirements for each class of tracks—governing everything from gage, alinement, and elevation, to crossties, curve speed, and rail joints." Id.

The trial court in this case relied on the following language from *Zimmerman*: "The regulations are part of a broad scheme to standardize railroad tracks. Admittedly, there is no regulation that classifies tracks based on sight distance. But the breadth of the scheme implies a decision not to classify on that basis. At the very least, it implies that the federal government did not want states to decide how tracks would be classified. We doubt that the federal government would create a detailed system with the expectation that states would impose extra classification requirements—especially given the risk that the requirements would vary from state to state. This regulatory scheme preempts [the plaintiff's] misclassification claim." Id. The trial court in this case then concluded that, "[a]s in *Zimmerman*, the plaintiff's track selection claim is subsumed by this regulatory scheme. Although there is no regulation that classifies tracks on the basis of track selection, such as the choice of using an exterior or interior track, 'the breadth of the scheme implies a decision not to classify on that basis.' . . . As part of an overall scheme . . . that expansively covers railroad track safety . . . the subject matter of the plaintiff's claim is clearly 'covered' *and* 'substantially subsumed' by these federal regulations. . . . The plaintiff's track selection claim is therefore preempted by this regulatory scheme." (Citations

omitted; emphasis in original.)

We disagree that the foregoing analysis from *Zimmerman* is applicable to the plaintiff's claim in the present case. Unlike *Zimmerman*, the claim in this case is not based on an area that is clearly covered by the federal regulations. In *Zimmerman*, it was undisputed that the regulations dictate whether a track is classified as class one, two or three on the basis of various factors set forth in those regulations. *Zimmerman* v. *Norfolk Southern Corp.*, supra, 706 F.3d 179. It was also undisputed in *Zimmerman* that the basis of the claim at issue was whether the defendant properly classified the track. Id., 187. In *Zimmerman*, the plaintiff's claim essentially sought to impose another factor into the decision of how to classify tracks—namely, the sight distance of a particular track. Id. In concluding that the claim in *Zimmerman* was preempted, the Third Circuit concluded that the regulations already covered and subsumed the factors by which a track should be classified as class one, two or three. Id.

Indeed, as the United States Court of Appeals for the Fifth Circuit has explained, preemption under the railroad act "is even more disfavored than preemption generally. . . . The restrictive terms of its preemption provision [indicate] that [preemption] will lie only if the federal regulations *substantially subsume* the subject matter of the relevant state law. . . . When applying [railroad act] preemption, the [c]ourt eschews broad categories such as railroad safety, focusing instead on the specific subject matter contained in the federal regulation. . . . In sum, when deciding whether the [railroad act] preempts state laws designed to improve railroad safety, we interpret the relevant federal regulations narrowly to ensure that the careful balance that Congress has struck between state and federal regulatory authority is not improperly disrupted in favor of the federal government." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *United Transportation Union* v. *Foster*, 205 F.3d 851, 860 (5th Cir. 2000).

In the present case, the regulations do not differentiate between interior or exterior tracks and, most certainly, do not provide a set of factors by which interior or exterior tracks are chosen. Accordingly, the regulations do not cover the selection of interior or exterior tracks. Unlike the trial court, we are not persuaded that the failure to address the selection of interior or exterior tracks implies a decision not to differentiate between the two. As the case law we have discussed herein demonstrates, in light of the limited preemption provision in the railroad act, the mere exclusion of a topic from the federal regulations does not imply an intent to preempt state law on that topic.

On the basis of the foregoing, although we agree with the trial court that there are extensive federal

regulations that address various topics related to tracks, we cannot conclude that the subject matter of the plaintiff's negligence claim—namely, the selection of an exterior track for operating a through train—is "covered by" a federal regulation. To the contrary, the federal regulations relating to tracks touch upon, but do not substantially subsume, the subject matter of the plaintiff's complaint.[9]

Our conclusion is further buttressed by a review of cases in which a court has found that a federal regulation covers, or substantially subsumes, the subject matter of a complaint. For instance, in *In re Derailment Cases*, 416 F.3d 787, 794 (8th Cir. 2005), the United States Court of Appeals for the Eighth Circuit concluded that the plaintiff's claim alleging negligent inspection of freight cars was preempted by the railroad act. The Eighth Circuit concluded that the plaintiff's claim was preempted under the railroad act because "[i]t is clear that the [federal railway administration's] regulations are intended to prevent negligent inspection by setting forth minimum qualifications for inspectors, specifying certain aspects of freight cars that must be inspected, providing agency monitoring of the inspectors, and establishing a civil enforcement regime. These intentions are buttressed by the [federal railway administration] inspection manual for federal and state inspectors." Id.; see also *BNSF Railway Co.* v. *Swanson*, 533 F.3d 618, 619–20 (8th Cir. 2008) (concluding that state statute making it illegal to, inter alia, "discipline, harass or intimidate [a railroad] employee to discourage the employee from receiving medical attention" was preempted by federal regulation mandating that railroads adopt policy statement declaring that "harassment or intimidation of any person that is calculated to discourage or prevent such person from receiving proper medical treatment or from reporting such accident, incident, injury or illness will not be permitted or tolerated" [emphasis omitted; internal quotation marks omitted]), citing 49 C.F.R. § 225.33 (a) (1) (2008). As these cases demonstrate, courts have found preemption under the railroad act only when there is a federal regulation that thoroughly addresses the safety concern raised in the plaintiff's complaint, not merely mentions it or tangentially relates to it. See *CSX Transportation, Inc.* v. *Easterwood*, supra, 507 U.S. 664–65 (regulations cover subject matter of plaintiff's complaint when they "comprise, include, or embrace [that concern] in an effective scope of treatment or operation" [internal quotation marks omitted]).

The defendant further asserts that the plaintiff's claim is preempted because, although framed as a claim relating to track selection, it is essentially an excessive speed claim, which is preempted by the railroad act. We disagree.

It is well established that there are federal regulations

that cover the subject matter of train speed with respect to track conditions. See id., 675 ("concluding that relevant regulation "should be understood as covering the subject matter of train speed with respect to track conditions, including the conditions posed by grade crossings"), citing 49 C.F.R. § 213.9 (a) (1992). To be clear, the plaintiff in this case does not assert that the defendant violated a federal standard of care because the train was not traveling above the speed limit. Cf. *Zimmerman* v. *Norfolk Southern Corp.*, supra, 706 F.3d 179. Accordingly, if the plaintiff's claim was based on the speed of the train, it would be preempted by the railroad act because all parties agree that the train was traveling within the established speed limit.[10]

The plaintiff claims that the defendant "violated practices and customs with respect to track selection by moving a through train traveling in excess of seventy miles per hour on the track immediately adjacent to the platform when reasonable care and general practice of [the defendant] required that train to be on an interior track away from the platform." The defendant asserts that this "can only be characterized as a speed claim." We disagree.

We find *Dresser* v. *Union Pacific Railroad Co.*, 282 Neb. 537, 809 N.W.2d 713 (2011), instructive. In *Dresser*, a motor vehicle passenger who was injured in a collision with a train brought a state law negligence action against the railroad company. Id., 538. The complaint alleged that the train crew was negligent in failing to maintain a proper lookout, failing to slow or stop the train to avoid the collision, and failing to sound the horn. Id., 540. The trial court concluded that the plaintiff's claim was preempted. Id., 541. The trial court reasoned that the engineer's failure to exercise ordinary care to avoid the accident by failing to slow or stop the train was essentially an excessive speed claim, which was preempted by the railroad act. Id., 549.

The Supreme Court of Nebraska reversed the judgment of the trial court. Id., 553. In doing so, the Supreme Court of Nebraska reasoned: "We do not agree with the [trial] court that appellants' state law negligence claim based on [the railroad's] alleged failure to exercise ordinary care once it appeared that a collision would probably occur is speed based and thus preempted. State tort law is not preempted 'until' a federal regulation 'cover[s]' the same subject matter, and we are not presented with any federal regulations that cover a railroad's duty to exercise ordinary care in situations where collisions are imminent. The mere fact that the speed the train is traveling is tangentially related to how quickly it can be stopped does not transform the claim into an excessive speed claim. Nebraska tort law duties to exercise reasonable care could be violated even if the federal train speed limits are being followed." (Footnote omitted.) Id.

Similarly, in *Bashir* v. *National Railroad Passenger Corp.*, 929 F. Supp. 404, 412 (S.D. Fla. 1996), aff'd sub nom. *Bashir* v. *Amtrak*, 119 F.3d 929 (11th Cir. 1997), the United States District Court for the Southern District of Florida concluded that a plaintiff's state law negligence claims based on a failure to stop was not preempted by the railroad act. The railroad had asserted that the failure to stop claims were covered by the federal regulations on excessive speed. Id. The court rejected that claim, reasoning that the railroad was "quite correct" that the relevant regulation; see 49 C.F.R. § 213.9 (1993); "preempts inconsistent state laws regarding speed. As the [c]ourt understands [the] [p]laintiff's negligent failure to stop claims, however, they are not necessarily inconsistent with [that regulation]. This section simply prescribes the maximum speed at which trains may operate given certain track types and conditions. It is silent as to the instances in which a train must stop to avoid colliding with an obstruction on the tracks. State laws that direct a train to stop when, for instance, a child is standing on the tracks do not conflict with federal speed limits that prescribe the speed at which the same train may travel in normal circumstances on the same track. Indeed, if [the railroad's] position were correct, railroads would be insulated from state tort liability regardless of whether a train attempted to stop to avoid even the most obvious obstructions, simply because federal law prescribes the speed at which they may travel absent obstructions. *Easterwood* does not support this result." *Bashir* v. *National Railroad Passenger Corp.*, supra, 412.

Like the claims in *Dresser* and *Bashir*, the speed of the train in the present case is tangentially related to the plaintiff's claim. In other words, the plaintiff's claim alleges that the defendant was negligent in choosing to operate a train that did not stop at the Noroton Heights station on the track immediately adjacent to the platform. Because the plaintiff's claim relates to the fact that the train did not stop at the Noroton Heights station, the speed of that train is tangentially related to the plaintiff's claim. As the courts in *Dresser* and *Bashir* explained, title 49 of the Code of Federal Regulations, § 213.9, prescribes only the maximum speed at which trains may operate on certain track classifications. Nothing in that regulation covers the subject of the plaintiff's claim—namely, whether it is negligent to operate a through train on a track immediately adjacent to the platform when another track is available. Accordingly, we disagree that the plaintiff's claim is essentially an excessive speed claim that is preempted by the railroad act.

In light of the presumption against preemption, the narrow preemption provision in the railroad act, the express acknowledgment in title 49 of the Code of Fed-

eral Regulations, § 213.1, that the federal regulations provide the minimum safety standards, and the lack of a regulatory provision expressly addressing track selection, we cannot conclude that the defendant has met its burden of demonstrating that the plaintiff's claim was preempted under the railroad act. Accordingly, we conclude that the trial court improperly granted the defendant's motion for summary judgment.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion for summary judgment and for further proceedings according to law.

In this opinion the other justices concurred.

[1] Although the plaintiff also brought claims against the town of Darien and Wilton Enterprises, Inc., she has subsequently withdrawn those claims. For the sake of simplicity, we refer to Metro-North Commuter Railroad Company as the defendant.

[2] During the underlying proceedings, the defendant asserted that the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10101 et seq., also preempted the plaintiff's negligence claims. The defendant has withdrawn that claim, and, therefore, we do not address it in the present appeal.

[3] We note that the plaintiff amended her complaint five times. The operative complaint was filed on March 21, 2017.

[4] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[5] To the extent that the trial court's decision can be read to conclude that the plaintiff's negligence claim relating to track selection is preempted by the railroad act solely because "there is no federal standard of care for the defendant to have violated," we disagree. Instead, we conclude that, under the two part test adopted by federal courts, if there is no express regulation governing the subject area of the plaintiff's complaint, the court must next consider whether there is a federal regulation or order covering the subject matter of state law related to the plaintiff's claim in order to resolve the question of preemption. Indeed, both parties agree on the applicable test.

[6] We recognize that *CSX Transportation, Inc.* v. *Easterwood*, supra, 507 U.S. 661–65, was decided prior to the 2007 amendment to the preemption provision in the railroad act. Nevertheless, it is well established that the interpretation of the preemption provision in *Easterwood* remains good law for the purpose of interpreting 49 U.S.C. § 20106 (a). See, e.g., *Zimmerman* v. *Norfolk Southern Corp.*, supra, 706 F.3d 177–78.

[7] As noted subsequently in this opinion, a separate claim that the railroad had failed to remove excessive vegetation from the area surrounding the crossing was the subject of further proceedings on remand. See *Shanklin* v. *Norfolk Southern Railway Co.*, 369 F.3d 978, 987 (6th Cir. 2004).

[8] In *Haynes* v. *National Railroad Passenger Corp.*, supra, 423 F. Supp. 2d 1073, the railroad also asserted that the plaintiffs' claims were preempted under the commerce clause of the United States constitution because allowing states to regulate these areas would place an undue burden on the flow of commerce across state borders. See U.S. Const., art. I, § 8, cl. 3. The court concluded that the plaintiffs' claims regarding seats and seat configuration were preempted under a dormant commerce clause analysis but that the plaintiffs' claims relating to the railroad's duty to warn passengers were not. *Haynes* v. *National Railroad Passenger Corp.*, supra, 1083–84.

[9] We also note that, in California, the California High-Speed Train Project regulates track selection for through trains and has done so for almost ten years. See California High-Speed Train Project, "Technical Memorandum 2.2.4: High-Speed Train Station Platform Geometric Design" (2010) p. 11, available at http://www.hsr.ca.gov/docs/programs/eir_memos/Proj_Guidelines_TM2_2_4R01.pdf (last visited July 3, 2019). This memorandum provides that, "[w]here practical, do not locate the platform adjacent to mainline high-speed tracks. If this is not possible, passenger access to platforms adjacent to tracks where trains may pass through stations without stopping may require mitigation . . . ." Id. The existence of the regulatory scheme in California further supports our conclusion that the railroad act does not preempt state law governing track selection.

[10] The plaintiff's initial complaint included a claim that the defendant "failed to maintain a proper operating speed of the train . . . ." The defendant subsequently filed motions in limine seeking to preclude the plaintiff from offering any evidence, testimony, or argument regarding a claim of negligence based on the speed of the train and any evidence, testimony, or argument regarding any claim preempted by the railroad act or the Interstate Commerce Commission Termination Act. The trial court granted the defendant's motions. Thereafter, the plaintiff filed the operative complaint, which does not contain any claim related to the speed of the train. Indeed, the plaintiff concedes that "the sole remaining theory of negligence is limited to track selection."